# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
### SOUTHERN DIVISION

| | |
|---|---|
| **EBONY LAWSON,** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| **v.** | )    **Case No.: 2:17-CV-1885-VEH** |
| | ) |
| **WAL-MART STORES, EAST, L.P.,** | ) |
| | ) |
| **Defendant.** | ) |

---

## MEMORANDUM OPINION AND ORDER

This slip-and-fall case was filed by Plaintiff Ebony Lawson against Defendant

Wal-Mart Stores, East, L.P. ("Wal-Mart").[1] The Complaint (doc. 1-4) sets out one

---

[1] Ms. Lawson's Complaint (doc. 1-4) also named twelve fictitious defendants. However, the Court will dismiss these fictitious defendants and Ms. Lawson's claims against them *sua sponte* because the deadlines for discovery and for Ms. Lawson to amend her Complaint have run, and—except for the filing of an Amended Complaint (doc. 11) that the Court has already stricken (*see* doc. 16)—Ms. Lawson has made no efforts to amend her Complaint to substitute the fictitious defendants with their true identities. More specifically, the Court's Scheduling Order (doc. 8) established the deadline of October 26, 2018, for the completion of discovery and the deadline of February 9, 2018, for Ms. Lawson to amend her pleadings. (*See id.* at 1, 2). Prior to this deadline, Ms. Lawson filed her Amended Complaint on January 4, 2018, to add David Roberts as a defendant. (Doc. 11) However, the Court struck the Amended Complaint on February 2, 2018 (*see* doc. 16), and, accordingly, the original Complaint that lists the fictitious defendants is the operative complaint in this action. On November 29, 2018, this case was referred to mediation, and the action was stayed. (*See* doc. 21). The parties were ordered to propose a revised scheduling order if mediation failed. (*See id.* at 2). Mediation failed, and the stay was lifted on February 5, 2019. (*See* doc. 23). However, the parties decided not to file a proposed revised scheduling order. (*See* doc. 28). Accordingly, the deadline of February 9, 2018, was the deadline for Ms. Lawson to amend her pleadings, which she failed to do. Accordingly, the twelve fictitious defendants and Ms. Lawson's claims against them are hereby **DISMISSED WITHOUT PREJUDICE**. *See Hair v. Lazega & Johanson LLC*, No. 13-1762, 2014 WL 12571424, at *14-15 (N.D. Ga. July 7, 2014) (recommending that the fictitious defendants be dismissed when "[t]he period for conducting discovery . . . . [had] passed more than seven months ago" and the plaintiff "[had] not sought to

count for negligence and one count for wantonness. (*See id.* at 2-4).

Before the Court is Wal-Mart's Motion for Summary Judgment (doc. 20) (the "Motion") filed on November 26, 2018. Ms. Lawson filed her opposition (doc. 25) to the Motion on February 26, 2019. Wal-Mart then filed its reply brief (doc. 27) in support of the Motion on March 12, 2019. Accordingly, the Motion is ripe for review. For the reasons stated in this opinion, the Motion is due to be **GRANTED IN PART** and otherwise **DENIED**.

# I.    STANDARD

amend the complaint to [substitute the fictitious defendants]"), *report and recommendation adopted*, No. 13-1762, 2014 WL 12575746 (N.D. Ga. Aug. 6, 2014); *see also Mays v. Gen. Binding Corp.*, No. 11-5836, 2013 WL 1986393, at *1 n.1 (D.N.J. May 10, 2013) (dismissing the plaintiffs' claims against twenty fictitious defendants when "[f]actual discovery [was] complete and the [p]laintiffs [had] not moved to name [those] fictitious parties" because "[i]t is well established that 'if after a reasonable period of discovery a plaintiff has not identified the fictitious defendant, the court may dismiss the fictitious defendant" (quoting *Martin v. Comunale,* No. 03-06793, 2006 WL 208645 (E.D. Pa. Jan. 18, 2006))), *aff'd*, 565 F. App'x 94 (3d Cir. 2014); *Hargis v. Aramark Corr. Serv., LLC*, No. 10-1006, 2013 WL 3465189, at *13-14 (D.N.J. July 10, 2013) (dismissing a fictitious defendant pursuant to Federal Rule of Civil Procedure 21 when "[f]actual discovery [was] complete and the [p]laintiff [had] not moved to name [the] fictitious party" because "[i]f after a reasonable period of discovery a plaintiff has not identified the fictitious defendant, the court may dismiss the fictitious defendant" (citing *Martin*, 2006 WL 208645)), *opinion vacated in part on other grounds sub nom. Hargis v. Atl. Cty. Justice Facility*, No. 10-1006, 2014 WL 1713461 (D.N.J. Apr. 28, 2014); *Atl. Used Auto Parts v. City of Phila.*, 957 F. Supp. 622, 625 (E.D. Pa. 1997) (dismissing two fictitious defendants when the plaintiffs "[had] not ascertained their true identities" because "[f]ictitious names must eventually be dismissed, if discovery yields no identities" (second alteration in original) (quoting *Scheetz v. Morning Call, Inc.*, 130 F.R.D. 34, 36 (E.D. Pa. 1990)), and because "Rule 21 of the Federal Rules of Civil Procedure allows this Court to drop parties on 'its own initiative at any stage of the action and on such terms as are just'" (quoting FED. R. CIV. P. 21)).

Under Federal Rule of Civil Procedure 56, summary judgment is proper if there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) ("[S]ummary judgment is proper if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." (internal quotation marks and citation omitted)). The party requesting summary judgment always bears the initial responsibility of informing the court of the basis for its motion and identifying those portions of the pleadings or filings that it believes demonstrate the absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 323. Once the moving party has met its burden, Rule 56(e) requires the non-moving party to go beyond the pleadings in answering the movant. *Id.* at 324. By its own affidavits—or by the depositions, answers to interrogatories, and admissions on file—it must designate specific facts showing that there is a genuine issue for trial. *Id.*

The underlying substantive law identifies which facts are material and which are irrelevant. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). All reasonable doubts about the facts and all justifiable inferences are resolved in favor of the non-movant. *Chapman v. Al Transport*, 229 F.3d 1012, 1023 (11th Cir. 2000). Only

disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. *Anderson*, 477 U.S. at 248. A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* If the evidence presented by the non-movant to rebut the moving party's evidence is merely colorable, or is not significantly probative, summary judgment may still be granted. *Id.* at 249.

How the movant may satisfy its initial evidentiary burden depends on whether that party bears the burden of proof on the given legal issues at trial. *Fitzpatrick v. City of Atlanta*, 2 F.3d 1112, 1115 (11th Cir. 1993). If the movant bears the burden of proof on the given issue or issues at trial, then it can only meet its burden on summary judgment by presenting *affirmative* evidence showing the absence of a genuine issue of material fact—that is, facts that would entitle it to a directed verdict if not controverted at trial. *Id.* (citation omitted). Once the moving party makes such an affirmative showing, the burden shifts to the non-moving party to produce "significant, probative *evidence* demonstrating the existence of a triable issue of fact." *Id.* (emphasis added) (citation omitted).

For issues on which the movant does not bear the burden of proof at trial, it can satisfy its initial burden on summary judgment in either of two ways. *Id.* at 1115-16. First, the movant may simply show that there is an absence of evidence to support the

non-movant's case on the particular issue at hand. *Id.* at 1116. In such an instance, the non-movant must rebut by either (1) showing that the record in fact contains supporting evidence sufficient to withstand a directed verdict motion, or (2) proffering evidence sufficient to withstand a directed verdict motion at trial based on the alleged evidentiary deficiency. *Id.* at 1116-17. When responding, the non-movant may no longer rest on mere allegations; instead, it must set forth evidence of specific facts. *Lewis v. Casey*, 518 U.S. 343, 358 (1996). The second method a movant in this position may use to discharge its burden is to provide affirmative *evidence* demonstrating that the non-moving party will be unable to prove its case at trial. *Fitzpatrick*, 2 F.3d at 1116. When this occurs, the non-movant must rebut by offering *evidence* sufficient to withstand a directed verdict at trial on the material fact sought to be negated. *Id.*

## II. PROCEDURAL HISTORY

On November 26, 2018, Wal-Mart filed the Motion. (Doc. 20). On November 29, 2018, this case was referred to mediation, and the action was stayed. (*See* doc. 21). On February 5, 2019, the stay was lifted because the mediation failed. (*See* doc. 23). On February 26, 2019, Ms. Lawson filed two documents: (1) her Rule 56(d) Motion Requesting Additional Discovery (doc. 24) (the "Motion To Reopen Discovery"), in which she moved the Court to deny the Motion or defer ruling on it

until after discovery was reopened and additional discovery was completed; and (2)

her opposition to the Motion. (Doc. 25). On March 4, 2019, the Court denied the

Motion To Reopen Discovery. (*See* doc. 26). On March 12, 2019, Wal-Mart filed its

reply brief in support of the Motion. (Doc. 27).

## III.     STATEMENT OF FACTS[2]

Ms. Lawson,[3] age 30, has a college education and lives in Adamsville.

Her employment history includes working at Taco Bell off and on for three

years. Her work at Taco Bell included safety training to ensure the floors were safe

for customers and employees and free of spills and hazards. The training and

employment included checking the condiments at Taco Bell to make certain there

were no spills or hazards on the floor. Her employment history included standing

--------

[2]  The facts set out herein are gleaned, in substantial part, from the facts proffered by the parties. To the extent that a party has proffered a fact which is not disputed, it has been included herein <u>exactly</u> as it was proffered, without citation. To the extent that a fact proffered by a party was disputed by another party, the Court first examined the proffered fact to determine whether the evidence cited in support of that fact actually supported the fact <u>as stated</u>. If it did not, the fact was not included. If it did, the Court then looked to whether the evidence cited in support of the dispute actually established a dispute. If it did not, the Court presented the fact as proffered, with citation to the evidence supporting the fact as proffered. If the cited evidence was disputed by contrary evidence, the evidence was viewed, as this Court must, in the light most favorable to the non-movant, with citation to such supporting evidence. If more explanation was needed, the Court included that information in an appropriate footnote. Some facts proffered by the parties, which the Court deemed irrelevant, immaterial, and/or redundant, may have been omitted. Further, as necessary, the Court may have included additional facts cast in the light most favorable to the non-movant.

[3]  While the briefs refer to Ms. Lawson as Plaintiff, the Court will refer to her either as Ms. Lawson or by using pronouns.

guard over a spill until it could be cleaned, or cleaning it up herself if it was small enough.

Ms. Lawson additionally worked at Lowe's for approximately one and a half years, which included computer-based learning on safety and monitoring of the floors in the store. She conceded that one of her main job duties as a sales associate at Lowe's was safety of the store, including the monitoring and cleaning of the floors.

Prior to the incident, Ms. Lawson shopped at the Adamsville Wal-Mart store every two weeks. She had shopped at that particular Wal-Mart store many times.

Ms. Lawson went to Wal-Mart on Sunday, August 28, 2016, at approximately 3:45 p.m. to shop for groceries. She has good vision, and the store was well-lit on that day. She admittedly had no problem seeing as she walked around the store in flip flops shopping for groceries. She shopped in the store for around one hour prior to the time she slipped. She did not see any problems in the store while she shopped for that hour. She did not see anything on the floor while shopping.

Her shopping cart was full at the time she walked toward the front checkout aisles. She had several cases of water on the rack under the bottom of the shopping cart. The cases of water were wrapped in plastic, and she did not see any problems with the water and did not see any leaks coming from the water bottles.

When asked whether the store was busy on a Sunday afternoon the week before

Labor Day, Ms. Lawson testified it was "so-so." However, she was directed from one checkout aisle to another aisle which was not as busy by Rebecca, a Wal-Mart associate. Ms. Lawson testified that "for the most part," she has only seen Wal-Mart associates directing customers to checkout aisles which are less crowded around the holidays.

The checkout aisles are located across the middle part of the front of the store. Ms. Lawson walked to the main aisle at the front of the store, which is marked as Aisle A on Exhibit 1.[4] She testified that Rebecca, who was between the fifth and tenth checkout aisles, directed her from checkout aisle 5 to checkout aisle 10 because it was less busy. Ms. Lawson had no problem being directed to a different checkout aisle by Rebecca and admitted it was helpful to her. She did not think Rebecca was directing her into any danger, and she has no evidence that Rebecca knew there was anything on the floor at the checkout area to which she was directed.

Ms. Lawson walked to the tenth checkout aisle and turned to the right onto that aisle from Aisle A. The checkout aisle is approximately 20 feet long and five feet wide. There was no one in line at that checkout aisle. The checkout aisle looked

---

[4] This fact—which was proffered by Wal-Mart and is not disputed by Ms. Lawson—was originally stated as follows and refers to Exhibit 2 to the Motion: "[Ms. Lawson] walked to the main aisle at the front of the store, which is marked as Aisle A on Ex. 2." (Doc. 20 at 78, ¶ 23) (emphasis added). Exhibit 2 to the Motion is Exhibit 1 to this opinion. *See* Exhibit 1. Accordingly, any time "Aisle A" is referenced, it refers to "Aisle A" as marked on Exhibit 1 to this opinion. *See id.*

similar to the photograph attached as Exhibit 2.[5]

Ms. Lawson was six to eight feet on Aisle A from the entrance to the checkout aisle at the time she turned right from Aisle A. The merchandise in her cart was not above the height of her shopping cart itself, and she conceded she was able to see clearly. According to Ms. Lawson, while she was still on Aisle A, she noticed the floor on the checkout aisle she was about to walk down had footprints and it appeared to her "like people tracking the bottom of their shoes."[6] However, she "did [not] see any wet stuff." (Doc. 20 at 28:88).[7] Further, she "[d]id [not] see any kind of tracking that put [her] on notice that there was a problem with the floor." (*Id.*) (emphasis

---

[5] This fact—which was proffered by Wal-Mart and is not disputed by Ms. Lawson—was originally stated as follows and refers to Exhibit 3 to the Motion: "The checkout aisle looked similar to the photograph attached as Ex. 3 to [the Motion]." (Doc. 20 at 79, ¶ 30) (emphasis added). Exhibit 3 to the Motion is Exhibit 2 to this opinion. *See* Exhibit 2.

[6] This fact, as stated above, was proffered by Wal-Mart in the Motion. (Doc. 20 at 79, ¶ 33) (citing *id.* at 28:88). In her opposition to the Motion, Ms. Lawson attempts to dispute this fact with the following argument: "Although [Ms. Lawson] observed footprints, she did not see 'wet stuff' in the aisle, nor did she see any kind of tracking 'indicating that there was a problem with the floor.'" (Doc. 25 at 4, ¶ 33) (citing doc. 20 at 28:88). However, as Wal-Mart points out in its reply brief in support of the Motion, Ms. Lawson's response does not create an actual dispute with Wal-Mart's proffered fact because the proffered fact "does not reference 'wet stuff' or tracking 'indicating that there was a problem with the floor.'" (Doc. 27 at 2, ¶ 33) (*see also* doc. 20 at 79, ¶ 33) (citing *id.* at 28:88). Instead, Ms. Lawson is stating additional facts. Because the Court finds that these additional facts are relevant to the outcome of this opinion, it has included them in the light most favorable to non-movant, Ms. Lawson, in the next two sentences. These sentences contain quotations from Ms. Lawson's deposition.

[7] *See supra* note 6.

added).[8] She did not look down at the floor once she entered the checkout aisle. (*See id.* at 29:90, 92).[9]

---

[8] *See supra* note 6.

[9] This fact, as stated above, was proffered by Wal-Mart in the Motion. (Doc. 20 at 79, ¶ 34) (citing *id.* at 29:90, 92). In her opposition to the Motion, Ms. Lawson attempts to dispute this fact with the following argument: "As [Ms. Lawson] entered 'aisle [10][,]' she looked down at the floor[,] and [she] looked down at the floor when on 'aisle 10[.]['']" (Doc. 25 at 4, ¶ 34) (citations omitted) (citing doc. 20 at 29:90, 92). In its reply brief in support of the Motion, Wal-Mart argues that Ms. Lawson's response does not create an actual dispute with its proffered fact because she "does not . . . dispute that she looked down at the floor once she entered the checkout aisle." (Doc. 27 at 2, ¶ 34).

The Court notes that Wal-Mart's argument in its reply brief—which is that Ms. Lawson fails to dispute the fact that she "looked down at the floor once she entered the checkout aisle" (*id.*)—is problematic. This is because it contradicts Wal-Mart's proffered fact that Ms. Lawson "did not look down at the floor once she entered the checkout aisle" (doc. 20 at 79, ¶ 34) (citing *id.* at 29:90, 92), and, thus, Wal-Mart is taking inconsistent positions on whether Ms. Lawson looked down at the floor once she entered the checkout aisle. While the Court believes that Wal-Mart may have made a typographical error in its reply brief, the Court need not consider this possibility because the evidence, viewed in the light most favorable to Ms. Lawson, supports Wal-Mart's proffered fact and does not support Ms. Lawson's response in her opposition. Accordingly, the Court has included Wal-Mart's proffered fact as it is stated in the Motion.

More specifically, the relevant lines from Ms. Lawson's deposition are as follows:

Q. Once you've got -- you know, you said that as you were entering aisle [10], you looked at the floor?

A. Uh-huh.

Q. <u>Yes. Once you actually entered the aisle itself, did you look down at the floor again?</u>

A. <u>No.</u>

. . .

Q. And it was when you first turned that you looked down at the floor on aisle ten?

She walked down that checkout aisle to the area between the credit card reader and the back of the cash register. She then walked to the right side of her cart to place her merchandise on the conveyor belt. She did not slip or slide from the time she entered the checkout aisle to the time she placed her groceries on the belt.

Ms. Lawson told the cashier she had forgotten to get salad dressing and testified that the cashier told her to get it while the cashier finished ringing up her merchandise. She then walked across the same area of the floor she had previously walked over when she had moved her items from her shopping cart onto the belt. She "[does] [not] have an independent memory of looking down at the floor." (Doc. 20 at

---

A.      Yes.

Q.      And then when you stopped the cart, you did not look at the floor again?

A.      Right.

(*Id.* at 29:90, 92) (emphases added). Accordingly, the deposition—when read in the light most favorable to Ms. Lawson—establishes two facts: (1) Ms. Lawson looked down at the floor on aisle 10 when she first turned to enter that aisle, and (2) Ms. Lawson did not look at the floor again when she was on aisle 10. Thus, the deposition supports Wal-Mart's proffered fact that "[Ms. Lawson] did not look down at the floor once she entered the checkout aisle" (*id.* at 79, ¶ 34) (citing *id.* at 29:90, 92), and it contradicts Ms. Lawson's response in her opposition to the Motion that she did "look[] down at the floor when on 'aisle 10[.]['']" (Doc. 25 at 4, ¶ 34) (citing doc. 20 at 29:92). Further, the Court notes that the other part of Ms. Lawson's response—that, "[a]s [she] entered 'aisle [10][,]' she looked down at the floor" (*id.* at 4, ¶ 34) (citing doc. 20 at 29:90)—is supported by the deposition, but it does not need to be included here as an additional fact because this information is already conveyed by the facts included earlier in this paragraph. Accordingly, as stated earlier, the Court will include Wal-Mart's proffered fact as it is stated in the Motion and will not include any additional facts regarding Ms. Lawson's failure to look down at the floor once she entered the checkout aisle.

30:95).[10] She did not slip or slide.

---

[10]   Wal-Mart proffered the following fact: "She did not look down at the floor when she walked back over that same area to leave the checkout aisle[] . . . ." (Doc. 20 at 80, ¶ 40) (citing *id.* at 30:95). In response, Ms. Lawson—citing the same evidence as Wal-Mart—argues that she only "testified that she 'had no independent memory of looking down at the floor,'" and that she "did not testify that she in fact failed to look down at the floor." (Doc. 25 at 4, ¶ 40) (citing doc. 20 at 30:95). The Court has reviewed the evidence and determined that Ms. Lawson is correct: she only testified that she "[does] [not] have an independent memory of looking down at the floor." (Doc. 20 at 30:95). However, even though the Court has now determined that the evidence supports Ms. Lawson's version of this fact, the Court must now address three other issues that Wal-Mart raises in its reply brief in support of the Motion.

First, Wal-Mart argues that "[Ms. Lawson] provides nothing by way of evidence to controvert the statement that [she] did not look down at the floor when she walked back over the same area to leave the checkout aisle." (Doc. 27 at 2, ¶ 40). The Court rejects this argument because Wal-Mart fails to understand that, as the moving party, it must first support its version of this fact with <u>evidence</u>. More specifically, the Court construes Wal-Mart's argument to be that, in order to establish a factual dispute, the non-movant must provide evidence that is more than just saying that she "[does] [not] have an independent memory" of the event. This is true in the scenario in which Wal-Mart has evidence that Ms. Lawson did not look down at the floor and then Ms. Lawson only responds by citing testimony stating that she "[does] [not] have an independent memory" of the event. *See Magee v. WD Servs., LLC*, No. 16-2132, 2017 WL 424857, at *2 n.19 (D. Nev. Jan. 30, 2017) (citing *Fed. Election Comm'n v. Toledano*, 317 F.3d 939, 950 (9th Cir. 2002) (testimony such as 'I don't recall,' 'I forgot,' 'I'm not entirely sure,' and 'I have no independent recollection' was insufficient to create a genuine issue of material fact to survive a motion for summary judgment)). However, here, <u>Ms. Lawson is not attempting to rebut Wal-Mart's evidence</u>. Instead, <u>Ms. Lawson is pointing out that Wal-Mart has no evidence</u>. More specifically, Ms. Lawson is pointing out that the line from the deposition that Wal-Mart is using to support its proffered fact—which is that Ms. Lawson "did not look down at the floor"—actually only says that Ms. Lawson "[does] [not] have an independent memory of looking down at the floor." (*See* doc. 20 at 30:95).

Second, Wal-Mart argues that "[Ms. Lawson]'s testimony that she has no independent memory of looking down at the floor is the equivalent of saying she did not look down at the floor for purposes of considering [the Motion]." (Doc. 27 at 2, ¶ 40). However, Wal-Mart cites no legal authority in support of its argument. Accordingly, this issue is waived. *Patrick v. City of Birmingham*, No. 09-1825, 2010 WL 11468979, at *2 (N.D. Ala. Oct. 28, 2010) ("[T]he failure to reference any legal authority constitutes an undeveloped argument and waives the issue." (citing *Flanigan's Enters., Inc. v. Fulton Cty.*, 242 F.3d 976, 987 n.16 (11th Cir. 2001) (holding that a party waives an argument if the party "fail[s] to elaborate or provide any citation of authority in support" of the argument); *Ordower v. Feldman*, 826 F.2d 1569, 1576 (7th Cir. 1987) (stating that

an argument made without citation to authority is insufficient to raise an issue before the court))).
Further, the Court notes that Wal-Mart's position is contrary to the standard that the Court must
"view[] the facts and inferences in the light most favorable to the non-moving party." *Johnson v.
Cty. of Paulding*, No. 18-14994, 2019 WL 3064877, at *1 (11th Cir. July 12, 2019) (citing *United
States v. One Piece of Real Prop. Located at 5800 SW 74th Ave., Miami, Fla.*, 363 F.3d 1099,
1101 (11th Cir. 2004)).

Third, Wal-Mart argues that "[Ms. Lawson] offers no testimony that she, in fact, looked
down at the floor when she entered the checkout aisle the second time."(Doc. 27 at 2, ¶ 40). The
Court rejects this argument because it is irrelevant. The factual issue here is not whether Ms.
Lawson "looked down at the floor when she entered the checkout aisle the second time." Instead,
the factual issue is whether Ms. Lawson looked down at the floor when she left the checkout aisle
to go get salad dressing. While the Court notes that Ms. Lawson's response in her opposition to the
Motion may have contributed to Wal-Mart's confusion—since Ms. Lawson cited evidence stating
that she "[does] [not] have an independent memory of looking down at the floor" on <u>either</u> occasion
(*see* doc. 25 at 4, ¶ 40) (citing doc. 20 at 30: 95, 31: 98)—this does not change the fact that Wal-
Mart's third argument—along with Ms. Lawson's cited evidence regarding the second factual
question of whether she looked down when she entered the checkout aisle for the second time—is
irrelevant to the first factual question of whether she looked down when she left the checkout aisle
to go get the salad dressing.

Accordingly, the Court rejects all three of Wal-Mart's arguments. Thus, the Court will use
the version of this fact as stated in the deposition and not as proffered by Wal-Mart. Further, the
Court wishes to make two observations of its own. First, on a related factual issue that was
discussed in the previous paragraph—the question of whether Ms. Lawson looked down when she
entered the checkout aisle for the second time—she similarly testified during her deposition that she
"[does] [not] have an independent memory of looking down at the floor." (Doc. 20 at 31:98).
However, Wal-Mart accurately proffers this fact as stated in Ms. Lawson's deposition (*see id.* at
80, ¶ 43) ("She does not recall looking down at the floor when she turned onto the checkout aisle
from Aisle A." (citing *id.* at 31:98, 33:105-06)) instead of trying to use this evidence to state that
Ms. Lawson definitely "did not look down at the floor." Accordingly, Wal-Mart's three arguments
that the Court addressed above are less persuasive because of Wal-Mart's internal inconsistency in
the Motion: if Ms. Lawson's deposition testimony that she "[does] [not] have an independent
memory of looking down at the floor" really should be treated as "the equivalent of saying [that] she
did not look down at the floor for purposes of considering [the Motion]" (*see* doc. 27 at 2, ¶ 40),
then it is confusing that Wal-Mart only treated this testimony in this manner for the first factual
issue of whether Ms. Lawson looked down when she left the checkout aisle to go get salad dressing
and not for the second factual issue of whether Ms. Lawson looked down when she entered the
checkout aisle for the second time. Second, the Court notes that its decision to use the version of
this fact as cited in the deposition—that Ms. Lawson "[does] [not] have an independent memory of
looking down at the floor" (doc. 20 at 30:95)—instead of the version of this fact as proffered by

Ms. Lawson got the salad dressing and some cupcakes and walked over the same area from the grocery section of the store down Aisle A to her checkout aisle. She was in the same location six to eight feet on Aisle A when she once again turned to the right to walk down the checkout aisle. She does not recall looking down at the floor when she turned onto the checkout aisle from Aisle A.[11] She testified that, "as well as [she] can remember," "[w]hen [she] got back to aisle ten, . . . [her] [shopping] cart . . . [had been] pushed up . . . [m]aybe five additional feet." (Doc. 20 at 31:99).[12]

_____

Wal-Mart—that "[s]he did not look down at the floor when she walked back over that same area to leave the checkout aisle[]" (*id.* at 80, ¶ 40)—does not affect its analysis.

[11] This fact, as stated above, was proffered by Wal-Mart in the Motion. (Doc. 20 at 80, ¶ 43) (citing *id.* at 31:98, 33:105-06). In her opposition to the Motion, Ms. Lawson attempts to dispute this fact with the following argument: "[Ms. Lawson] testified that had she seen the 'wet stuff' she would not have stepped in it because she didn't want 'to get hurt.'" (Doc. 25 at 4, ¶ 43) (citing doc. 20 at 39:132). However, as Wal-Mart points out in its reply brief in support of the Motion, Ms. Lawson's response does not create an actual dispute with Wal-Mart's proffered fact because whether Ms. Lawson would have stepped in the "wet stuff" had she seen it is irrelevant to whether she does or does not "recall looking down at the floor when she turned onto the checkout aisle from Aisle A." (*See* doc. 27 at 2, ¶ 43) (*see also* doc. 20 at 80, ¶ 43) (citing *id.* at 31:98, 33:105-06). Further, the Court did not include Ms. Lawson's response as an additional fact because this information is conveyed in the last paragraph of the Court's "Statement of Facts."

[12] In her opposition to the Motion, Ms. Lawson proffered the following fact: "Upon return to the check-out lane, [she] observed that her shopping cart had been moved foward in the check-out aisle by approximately five (5) feet." (Doc. 25 at 7, ¶ 13) (citing doc. 20 at 31:99). In its reply brief in support of the Motion, Wal-Mart responds as follows: "It is uncontroverted that [Ms. Lawson] testified that when she returned to the checkout aisle, she thought her cart had been pushed up 'maybe five additional feet.'" (Doc. 27 at 5, ¶ 13) (citing doc. 20 at 31:99). Accordingly, Wal-Mart does not dispute the underlying fact that Ms. Lawson's shopping cart was pushed forward by approximately five feet, but, instead, disputes how Ms. Lawson presents this fact (i.e., whether this is something that Ms. Lawson <u>actually observed</u> or something that Ms. Lawson <u>only thought, to the best of her recollection, occurred</u>). For clarity, the Court—keeping in mind that it

The cashier was still busy ringing up some of her items when she turned onto the checkout aisle. Because some of her groceries were still on the conveyor belt, she began to walk forward to place her salad dressing at the end of the belt. Ms. Lawson is not certain whether she was next to the handle of her shopping cart when she slipped and fell while walking toward the end of the conveyor belt. She landed on the floor in the position and area indicated by a stick figure on Exhibit 1.[13] While lying on the floor immediately after the fall, she felt that her clothes were wet and that she was lying in a liquid substance, and this was the first time she noticed any liquid on the floor. She did not see any liquid on the floor prior to the time she slipped.

While Ms. Lawson was still on the floor, Wal-Mart employees began to inspect items remaining in her shopping cart and immediately handed her a form to be filled out concerning the slip and fall accident. She attempted to comply with Wal-

---

must view the facts in the light most favorable to the Ms. Lawson—has included this fact as Ms. Lawson stated it during her deposition.

Further, the Court notes that, later in her deposition, Ms. Lawson testified that she was actually "not sure" how far her cart had been moved up. (Doc. 20 at 33:105). However, because Wal-Mart never disputed the underlying fact that Ms. Lawson's shopping cart was pushed forward by approximately five feet—and, instead, only disputed whether this was Ms. Lawson's actual observation or whether it was only a recollection—this is deemed to be admitted per the Court's Uniform Initial Order (doc. 2). (*See id.* at 18) ("All facts set forth in the statements required of the opposing parties will be deemed to be admitted for summary judgment purposes unless controverted in the manner required herein by the statement of the opposing party." (italics omitted)). However, the Court notes that this difference—whether Ms. Lawson's cart was pushed forward by five feet or by some undetermined distance—does not affect its analysis.

[13] *See supra* note 4 (explaining that Exhibit 2 to the Motion is Exhibit 1 to this opinion).

Mart's request, but she could not complete the form due to her being disoriented. Wal-Mart employees looked inside and underneath her shopping buggy, but they did not discover anything in the cart which was leaking liquid. While lying on the floor, Ms. Lawson did not see the source of the liquid.

After the incident, Ms. Lawson testified that she had a wet substance on her clothes down the leg of her pants up to the right side of her hips and her hands had a substance on them that looked like dirty water. After she stood up, she saw a puddle on the floor that was "maybe two feet" long and one foot wide. She testified the puddle was "dirty," she could see "dirty footprints," and there were shopping cart tracks in the puddle. She does not know how many shopping cart tracks were on the floor and does not know whether some customer's cart had gone through the puddle other than her own shopping cart. She admits that because the checkout aisle is only five feet wide that there is almost no way her shopping cart could have missed traveling through the puddle at the time she pushed her cart down the checkout aisle.

When asked what the substance looked like on Wal-Mart's white floor, she testified:

> A:    It looked clear like just – on the floor it looked like brown, just
>         like somebody had just been walking through. You know, I guess it
>         just looked like footprints.

> Q:    Kind of almost muddy in a way?

A:      Kind of sort of but nothing different from, I guess, what you see
        on the floor here. You know, I guess it's a clean floor. I don't
        know, but yeah.

Q:      Well, this is a clean floor but, you know, if – but it's white tile.

A:      Right.

Q:      So muddy color I'm thinking as dark brown.

A:      Right.

Q:      Is that what you were describing?

A:      It was brownish.

Q:      So what you saw in this one to two foot sized puddle is there was
        – there was a good bit of tracking –

A:       Yes, tracking.

Q:      – and where you see a number of footprints?

A:      (Witness nods head).

Q:      Yes?

A:      Yes.

Ms. Lawson admits that she would have walked through the puddle at the time

she pushed her shopping cart down the checkout aisle. She did not see the source of

the liquid on the floor. She does not remember the liquid being sticky. She did not see

anyone spill anything on the floor and does not know the origin of the liquid. She does

not know how the substance came to be on the floor, how long it had been on the floor

or how long the checkout aisle had been in the condition it was in at the time she slipped. She has no information or evidence that the liquid had been reported to Wal-Mart prior to the time she slipped. She did not hear anyone say the liquid had been on the floor for hours or hear anyone say something similar about the length of time it was on the floor. She never heard anyone from Wal-Mart say that they determined the source of the liquid.

Based on her job history, Ms. Lawson is aware that customers in stores can spill drinks. She testified that she believes the puddle was on the floor prior to the time she pushed her cart down the aisle and she simply failed to see it.[14] However, she

---

[14] This fact, as stated above, was proffered by Wal-Mart in the Motion. (*See* doc. 20 at 84, ¶ 64) (citing *id.* at 37:122). In her opposition to the Motion, Ms. Lawson attempts to dispute this fact with the following argument: "When [she] was within the checkout aisle, she was pushing her shopping cart from behind, and the shopping cart, which was full of groceries[,] may have obscured [her] view of the floor in that the 'cart may have been over [the liquid]' at the time.'" (Doc. 25 at 4, ¶ 64) (citing doc. 20 at 37:122). In response, Wal-Mart argues in its reply brief in support of the Motion that Ms. Lawson's argument does not dispute its proffered fact: "This paragraph should be deemed uncontroverted. [Ms. Lawson] unequivocally testified that she thinks the puddle was on the floor prior to the time she pushed her cart down the aisle and she simply failed to see it. [Her] response does not address the specific statement of undisputed fact." (Doc. 27 at 2-3, ¶ 64).

The Court notes that the relevant part of Ms. Lawson's deposition is as follows:

Q.      Do you think [the liquid] was there?

A.      Yes

Q.      <u>And you just didn't see it?</u>

A.      <u>Yes.</u>

Q.      And you also didn't slip or slide?

also testified that "when [she] initially went up to the register, it's very possible that [her] [shopping] cart could have been over [the puddle] or the handle [of the cart] could have been over it." (Doc. 20 at 37:123).[15] Based on her deposition testimony, Ms. Lawson concedes she would have been 18 feet from the puddle at the time she

_____

A.     Right.

Q.     All right. And then when you walked back out from the front of the cart and you walked around the cart to leave aisle ten, you would have walked over it again?

A.     It's possible that --

[Attorney]:     Object

A.     -- my cart may have been over it at the time. It's very possible.

Q.     Well, you -- the way you've drawn it[,] that's not right and you said you don't know whether the cart had moved or not?

A.     No. I'm saying when I -- when I initially went up to the register, it's very possible that my cart could have been over or the handle could have been over it where I didn't step into it just yet.

(Doc. 20 at 37:122-23) (emphases added). Accordingly, Wal-Mart is correct that Ms. Lawson testified that "[she] just didn't see [the puddle]." (*Id.* at 37:122). Further, Ms. Lawson's testimony that her shopping "cart could have been over" the puddle when she "initially went up to the register" (*id.* at 37:123) (emphasis added) does not dispute her prior testimony because it only provides a reason why she may not have seen the puddle during the first two times she walked through the aisle. However, it does not, of itself, explain why Ms. Lawson did not see the puddle the third time she walked through the aisle (when she was coming back from getting the salad dressing).

Accordingly, the Court has included Wal-Mart's proffered fact exactly as it is stated in the Motion. However, because Ms. Lawson's additional facts are relevant, the Court has also included the relevant part of her deposition in the next sentence.

[15]  *See supra* note 14.

19

turned from Aisle A onto the checkout aisle. She admits that if she had looked down at the floor she could have seen the puddle from a distance of 10 feet.[16] She understands that if there is liquid on the floor it can present a hazard to anyone who walks in the liquid. If she had seen the puddle from a distance of 10 feet, she would not have stepped in it because she would have recognized it as a slip hazard.

## IV. ANALYSIS

As stated earlier, the Complaint sets out one count for negligence and one count for wantonness. (*See* doc. 1-4 at 2-4). Wal-Mart seeks summary judgment on both claims. (*See* doc. 20 at 75). The Court finds that summary judgment should be denied on the negligence claim and granted on the wantonness claim. The Court will address the claims in turn.

### A. Wal-Mart Will Not Be Granted Summary Judgment on the Negligence Claim

---

[16] This fact, as stated above, was proffered by Wal-Mart in the Motion. (*See* doc. 20 at 84, ¶ 66) (citing *id.* at 39:132). In her opposition to the Motion, Ms. Lawson attempts to dispute this fact with the following argument: "[She] would not have stepped in the 'wet stuff' had she seen it[,] and[,] had she seen it[,] she would have recognized it as a 'slip hazard[.]'" (Doc. 25 at 5, ¶ 66) (citations omitted) (citing doc. 20 at 37:124, 39:132). However, as Wal-Mart points out in its reply brief in support of the Motion, Ms. Lawson's response does not create an actual dispute with Wal-Mart's proffered fact: "[Her] response does not address [Wal-Mart]'s statement of undisputed fact that [she] admits that if she looked down at the floor she could have seen the puddle from a distance of 10 feet. Whether [she] would not have stepped in wet stuff because[,] if she had seen it, she would recognize it as a slip hazard does not dispute [her] uncontroverted testimony that[,] if she had looked down at the floor from a distance of 10 feet, she could have seen the puddle." (Doc. 27 at 3, ¶ 66) (*see also* doc. 20 at 39:132). Further, the Court did not include Ms. Lawson's response as an additional fact because this information is already conveyed in the next two sentences of the Court's "Statement of Facts."

In the Motion, Wal-Mart presents only one argument why it should be granted summary judgment on Ms. Lawson's negligence claim: that the liquid puddle was "open and obvious." (Doc. 20 at 75, 87-95). More specifically, Wal-Mart argues as follows: "the open and obvious nature of a 'brownish' dirty puddle on a white floor that is two feet long and one foot wide, contains footprints and shopping cart tracks[,] and can be seen from a distance of 10 feet negates any duty which otherwise may have been owed by Wal-Mart." (*Id.* at 75).[17]

To address this argument, the Court will first discuss the premises-liability standard on which its analysis relies. The Court will then explain why the liquid puddle was not "open and obvious" and, thus, why Wal-Mart's argument fails.

---

[17] In addition to this argument, Wal-Mart also initially appears to make a second argument, which is as follows: "there is no evidence that Wal-Mart had superior knowledge over the knowledge of [Ms. Lawson] of the substance on the floor prior to the incident." (Doc. 20 at 75) (listing this argument as the second argument why it is entitled to summary judgment on the negligence claim). However, in the Motion, the only argument that Wal-Mart provides for why "there is no evidence that [it] had superior knowledge over the knowledge of [Ms. Lawson] of the substance on the floor prior to the incident" is that the liquid puddle was "open and obvious." (*See id.* at 95) (citing *Denmark v. Mercantile Stores Co., Inc.*, 844 So. 2d 1189, 1194) ("[I]f that superior knowledge is lacking, as when the danger is obvious, the [store owner] cannot be held liable." (second alteration in original) (quoting *Quillen v. Quillen*, 388 So. 2d 985, 989 (Ala. 1980))). Accordingly, while the Court understands that there are more reasons why a store owner would not have "superior knowledge" than just the argument that the hazard was "open and obvious," Wal-Mart provides no other argument, and, thus, this second argument regarding its lack of "superior knowledge" is really the same argument as its first argument that the liquid puddle was "open and obvious." Thus, the Court need only address the first argument regarding whether the liquid puddle was "open and obvious" because the outcome of that argument dictates the outcome of the second argument. More specifically, because the Court rejects Wal-Mart's first argument that, viewing the facts in the light most favorable to Ms. Lawson, the liquid puddle was "open and obvious," it must also reject Wal-Mart's second argument that it did not have "superior knowledge" over Ms. Lawson's knowledge regarding the risks of the liquid puddle.

1. **Premises-Liability Standard: Under Alabama Law, the "Open and Obvious" Defense Is an Affirmative Defense, and the Inquiry Is Whether an Objectively Reasonable Person in the Plaintiff's Circumstances Would Have Noticed and Appreciated the Dangerousness of the Hazard**

"In [a] premises-liability case, the elements of negligence are the same as those in any tort litigation: duty, breach of duty, cause in fact, proximate or legal cause, and damages." *Johnson v. Logan's Roadhouse, Inc.*, No. 14-2037, 2016 WL 4585927, at *3 (N.D. Ala. Sept. 2, 2016) (alteration in original) (quoting *Sessions v. Nonnenmann*, 842 So. 2d 649, 651 (Ala. 2002)). "The duty of a premises owner to an injured person depends on the status of the injured person in relation to the owner's property." *Id.* (citing *Galaxy Cable, Inc. v. Davis*, 58 So. 3d 93, 98 (Ala. 2010)). In this case, "[t]he parties agree that [Ms.] Lawson was an invitee of Wal-Mart." (Doc. 25 at 13) (*see also* doc. 20 at 88).

"[A] landowner owes an invitee the duty to keep the premises in a reasonably safe condition and, if the premises are unsafe, to warn of hidden defects and dangers that are known to the landowner but that are hidden or unknown to the invitee." *Johnson*, 2016 WL 4585927, at *3 (alteration in original) (citing *Galaxy Cable, Inc.*, 58 So. 3d at 98). "The entire basis of an invitor's liability rests upon [its] superior knowledge of the danger that causes the invitee's injuries. If that superior knowledge is lacking, as when the danger is obvious, the invitor cannot be held liable."

*Id.* (citing *Sessions*, 842 So. 2d at 652).

"It is well-settled that a wet floor inside a place of business . . . constitutes an unsafe condition for the business's customers." *Id.* at *4 (citing *Terrell v. Warehouse Groceries*, 364 So. 2d 675, 676 (Ala. 1978)). Accordingly, the owner of the premises normally would have a duty to warn invitees of the wet floor. However, "[t]he owner of [the] premises has no duty to warn an invitee of open and obvious defects in the premises which the invitee is aware of, or should be aware of, in the exercise of reasonable care on the invitee's part." *Id.* (citing *Dolgencorp, Inc. v. Taylor*, 28 So. 3d 737, 742 (Ala. 2009)). "In other words, proof of an open and obvious hazard negates an invitor's duty to warn an invitee of the hazard." *Id.* (citing *Sessions*, 842 So. 2d at 652). However, even though proof of an "open and obvious" hazard negates an invitor's duty, the invitee does not bear the burden of proof of proving that the hazard was not "open and obvious" and, thus, that the invitor owed her a duty of care; instead, "[the] argument that the [hazard] . . . was open and obvious is an affirmative defense, for which [the invitor] bears the ultimate burden of proof." *Dolgencorp, Inc.*, 28 So. 3d at 742 (explaining that there is no duty to warn of an open and obvious hazard but then clearly stating that "[the] argument that the [hazard] . . . was open and obvious is an affirmative defense" (citing *Horne v. Gregerson's Foods, Inc.*, 849 So. 2d 173, 176 (Ala. Civ. App. 2002); *Furgerson v.*

*Dresser Indus., Inc.*, 438 So. 2d 732, 734 (Ala. 1983))).[18]

"Courts use an objective standard to assess whether a hazard is open and

---

[18] In the Motion, Wal-Mart argues that an "open and obvious hazard negates the element of duty in [a] [p]laintiff's claim[]" and is not "an affirmative defense." (*See* doc. 20 at 88-92) (citing *Waters v. Paul Enters., Inc.*, 130 So. 3d 1220, 1222 (Ala. Civ. App. 2013); *Lamson & Sessions Bolt Co. v. McCarty*, 173 So. 388, 391 (Ala. 1937); *Jones Food Co. v. Shipman*, 981 So. 2d 355, 362 (Ala. 2006); *Sessions*, 842 So. 2d 649; *Hooks v. Dollar Gen. Corp.*, No. 14-1053, 2015 WL 6964289 (M.D. Ala. Nov. 10, 2015); *Blalock v. Wal-Mart Stores East, LP*, No. 06-381, 2007 WL 1412445 (M.D. Ala. May 11, 2007)). However, in *Dolgencorp, Inc.*, the Supreme Court of Alabama made clear that, even though courts, including itself in *Dolgencorp, Inc.*, discuss the "open and obvious" defense as the negation of a duty, it actually is "an affirmative defense, for which [the defendant] bears the ultimate burden of proof." *See* 28 So. 3d at 742 (citing *Horne*, 849 So. 2d at 176; *Furgerson*, 438 So. 2d at 734).

Further, for the following three reasons, the Court is not persuaded that any of the cases that Wal-Mart cites overcomes the clear language of the Supreme Court of Alabama in *Dolgencorp, Inc.* First, the Court is not persuaded by *Lamson & Sessions Bolt Co.*, *Jones Food Co.*, *Sessions*, or *Blalock* because these four cases were decided before *Dolgencorp, Inc.* Second, the Court is not persuaded by *Waters* because it relies solely on pre-*Dolgencorp, Inc.*, cases for its discussion of the "open and obvious" defense as the negation of a duty. *See Waters*, 130 So. 3d at 1222-23. Third, the Court is not persuaded by *Hooks* for the following two reasons: (1) it relies solely on *Blalock*—which is a *pre-Dolgencorp, Inc.*, decision—for the proposition that recent cases suggest that the "open and obvious" defense is the negation of a duty, and (2) even though it hinted that the "open and obvious" defense is the negation of a duty instead of an affirmative defense, it never actually "decide[d] the issue." *Hooks*, 2015 WL 6964289, at *5 n.7.

Lastly, the Court notes that recent cases have referred to the "open and obvious" defense as an affirmative defense. *See, e.g.*, *Gray v. L.B. Foster Co. Inc.*, 761 F. App'x 871, 873 (11th Cir. 2019) ("An argument that a danger was open and obvious is an <u>affirmative defense</u> for which the invitor bears the burden of proof." (emphasis added) (citing *Dolgencorp, Inc.*, 28 So. 3d at 742)); *Melton v. Kroger*, No. 18-518, 2019 WL 3208367, at *8 (M.D. Ala. July 16, 2019) ("Defendant's motion should be granted based upon the <u>affirmative defense</u> that the outlet was open and obvious." (emphasis added)); *Barnwell v. CLP Corp.*, 264 So. 3d 841, 848 (Ala. 2018) ("We discussed [the defendant's] argument that the alleged dangerous condition was open and obvious, and we concluded that the evidence did not support that <u>affirmative defense</u>." (emphasis added)). However, the Court notes that, even if it were to treat the "open and obvious" defense as the negation of a duty instead of as an affirmative defense, it would still reach the same conclusion of denying summary judgment on the negligence claim.

obvious." *Johnson*, 2016 WL 4585927, at *4 (citing *Dolgencorp, Inc.*, 28 So. 3d at 741-42). This is because "the question is whether the invitee should have observed the hazard, not whether the invitee actually appreciated it." *Id.* (citing *Dolgencorp, Inc.*, 28 So. 3d at 741-42). Further, "[e]ach case must be examined in light of its particular circumstances." *Id.* (quoting *Gray v. Mobile Greyhound Park, Ltd.*, 370 So. 2d 1384, 1389 (Ala. 1979)); *see also Blizzard v. Food Giant Supermarkets, Inc.*, 196 F. Supp. 2d 1202, 1207 (M.D. Ala. 2002) (stating that "the analysis of 'slip and fall' cases under Alabama law is fact intensive"). Accordingly, "[a] condition is 'obvious' if the risk is apparent to, and of the type that would be recognized by, a reasonable person in the position of the invitee." *Harris v. Target Stores, Inc.*, No. 17-569, 2019 WL 650436, at *3 (S.D. Ala. Jan. 2, 2019) (citing *Hartzog v. Compass Bank*, 686 So. 2d 325, 327 (Ala. Civ. App. 1996); *Hines v. Hardy*, 567 So. 2d 1283, 1284 (Ala. 1990)). "Thus, the Court must determine whether an objectively reasonable person in Ms. [Lawson]'s circumstances would have noticed and appreciated the dangerousness of the [liquid puddle] on [Wal-Mart's] [checkout aisle] floor." *Johnson*, 2016 WL 4585927, at *4.

## 2. Summary Judgment Will Be Denied on the Negligence Claim Because the Liquid Puddle Was Not "Open and Obvious" as a Matter of Law

In support of its argument that the liquid puddle was "open and obvious," Wal-

Mart does the following in the Motion. First, Wal-Mart lists facts that purportedly show that the liquid puddle was "open and obvious," but it does not make any argument based on these facts or cite any legal authority. (*See* doc. 20 at 92-93). Second, Wal-Mart cites two cases—(1) *Cummings v. Target Stores, Inc.*, No. 12-2798, 2014 WL 3889953 (N.D. Ala. Aug. 5, 2014), and (2) *Ex parte Neese*, 819 So. 2d 584 (Ala. 2001)—in which the hazard was found to be "open and obvious" and analogizes this case to those two cases. (*See* doc. 20 at 93-95).

Accordingly, the Court will first address Wal-Mart's argument based on *Cummings* and *Ex parte Neese* since this is the only explicit argument that Wal-Mart makes and also is the only argument that is supported with legal authority. Then, the Court will review Wal-Mart's list of facts and address its implicit argument that summary judgment is proper based on these facts.

Ultimately, the Court rejects Wal-Mart's arguments and finds that, viewing the facts in the light most favorable to Ms. Lawson, the liquid puddle was not "open and obvious" because "an objectively reasonable person in [her] circumstances would [not] have noticed and appreciated the dangerousness of [it]." *See Johnson*, 2016 WL 4585927, at *4. Accordingly, summary judgment will be denied on the negligence claim.

   a. The Court rejects Wal-Mart's argument based on
     *Cummings* and *Ex parte Neese*

Wal-Mart cites *Cummings* and *Ex parte Neese* as cases in which a hazard was found to be "open and obvious" when a plaintiff "walked over [a] hazard 2-3 times" before slipping and falling and she should have seen the hazard, appreciated the danger, and avoided it if she had been "exercis[ing] reasonable care." (Doc. 20 at 94) (citing *Cummings*, 2014 WL 3889953, at *6; *Ex parte Neese*, 819 So. 2d at 590). More specifically, Wal-Mart quotes the following analysis from *Cummings*:

> Indeed[,] [the plaintiff] testified that had she been watching the floor instead of eating her popcorn, she would have probably noticed the spill because it was "readily visible" and something that could be seen from "a little ways off." She had walked the area where she fell twice prior to her fall and noticed nothing. [She] also testified that Target cashiers working some distance away should have been able to notice the spot of liquid on the floor - if that is the case, then [the plaintiff] herself did not exercise sufficient care for her own safety to observe liquid on the floor that was "readily visible."

(*Id.*) (quoting *Cummings*, 2014 WL 3889953, at *6). Wal-Mart then summarizes the analysis from *Ex parte Neese* as granting summary judgment "based on the open and obvious nature of the element, where [the] plaintiff walked over the hazard 2-3 times, failing to exercise reasonable care to appreciate the hazard." (*Id.*) (citing *Ex parte Neese*, 819 So. 2d at 590).

However, the Court finds that *Cummings* and *Ex parte Neese* are distinguishable, and it rejects Wal-Mart's argument based on them. First, the Court will distinguish *Cummings*. Second, the Court will distinguish *Ex parte Neese*. Third,

the Court will analyze the paragraph in which Wal-Mart analogizes this case to

*Cummings* and *Ex parte Neese* and explain why Wal-Mart fails to show that summary

judgment is proper.

i.     Cummings *Is Distinguishable and Unpersuasive*

As stated above, Wal-Mart quotes the following analysis from *Cummings*:

> Indeed[,] [the plaintiff] testified that had she been watching the
> floor <u>instead of eating her popcorn</u>, she would have probably noticed the
> spill because it was "readily visible" and something that could be seen
> from "a little ways off." She had walked the area where she fell twice
> prior to her fall and noticed nothing. <u>[She] also testified that Target</u>
> <u>cashiers working some distance away should have been able to notice the</u>
> <u>spot of liquid on the floor - if that is the case, then [the plaintiff] herself</u>
> <u>did not exercise sufficient care for her own safety to observe liquid on</u>
> <u>the floor that was "readily visible."</u>

(*Id.*) (emphases added) (quoting *Cummings*, 2014 WL 3889953, at *6). The Court

notes that this analysis could be read in two different ways since the last sentence is

phrased in a way in which it could be read as standing on its own. If the last sentence is

read on its own so that the rest of the paragraph is irrelevant to the *Cummings* court's

finding that the hazard was open and obvious, then its analysis could be interpreted as

stating the following: if "cashiers working some distance away should have been able

to notice the . . . liquid on the floor," and if the liquid is "readily visible," then the

plaintiff has failed to exercise reasonable care if she fails to see the liquid. However,

the Court rejects this reading and finds that the last sentence cannot be read alone but

must instead be read in the context of the entire paragraph. This is because the test—which is whether "an objectively reasonable person in [Ms. Lawson's] circumstances would have noticed and appreciated the dangerousness of [the liquid puddle]," *see Johnson*, 2016 WL 4585927, at *4, or, as the *Cummings* court phrased it, whether the plaintiff exercised reasonable care—is "fact intensive." *Blizzard*, 196 F. Supp. 2d at 1207; *see also Emps.' Benefit Ass'n v. Grissett*, 732 So. 2d 968, 983 (Ala. 1998) (stating that "tort cases are . . . fact-intensive" and acknowledging that "reasonable care" is a "standard[]" and not a "concrete rule[]" that "cover[s] each fact situation specifically as it arises"). Accordingly, a broad statement that a hazard is "open and obvious" just because individuals should have been able to see it and because it was "readily visible" is inappropriate and fails to account for the fact-intensive analysis of whether "an objectively reasonable person in [the plaintiff's] circumstances would have noticed and appreciated the dangerousness of [the hazard]." *See Johnson*, 2016 WL 4585927, at *4. In fact, there are Alabama cases in which individuals should have been able to see the hazard and the hazard was "readily visible," but the hazard was still found not to be "open and obvious" because a "fact-intensive" analysis showed otherwise. *See Kilic v. HVM, L.L.C.*, No. 12-801, 2013 WL 5347446, at *6 (M.D. Ala. Sept. 23, 2013) ("[T]he fact that the condition was in plain view does not automatically establish that it was open and obvious as a matter of

law." (citing *Blizzard*, 196 F. Supp. 2d at 1208)); *see also, e.g.*, *Ryles v. Wal-Mart Stores East L.P.*, No. 04-334, 2004 WL 3711972, at *1, *5 (M.D. Ala. Dec. 16, 2004) (finding that a "brown box[]" that was "slightly larger than a shoe box" and was "resting on the white floor" was not "open and obvious"); *Blizzard*, 196 F. Supp. 2d at 1208 (finding that the hazard was not "open and obvious" even though the plaintiff "testified that[,] had she been watching where she was walking, the [hazard] would have been open and obvious"). Accordingly, to the extent that Wal-Mart's argument relies solely on the last sentence of the quoted paragraph from *Cummings*, the Court rejects the argument because it is inconsistent with Alabama law.

Alternatively, if the *Cummings* court's analysis is based on all the facts in the quoted paragraph—and, thus, if Wal-Mart's argument is based on the entire quoted paragraph—the Court still rejects the argument because it finds that *Cummings* is unpersuasive. Importantly, under Alabama law, there is a distinction between a plaintiff not "looking where she [is] walking"—in which case a court will very likely grant summary judgment based on the hazard being "open and obvious"—versus a plaintiff looking where she is walking but just "not looking down"—in which case a court will very likely not grant summary judgment based on the hazard being "open and obvious." *Compare Harris*, 2019 WL 650436, at *3, *5 (finding that the hazard was "open and obvious" when the plaintiff "was not looking where she was walking

because she was trying to put on her sunglasses" and stating that the case was

distinguishable from other cases in which the hazard was not found to be open and

obvious when the plaintiff just "was not looking down" but was looking "forward"),

*and Browder v. Food Giant, Inc.*, 854 So. 2d 594, 596, 598 (Ala. Civ. App. 2002)

(finding that the hazard was "open and obvious" when the plaintiff stated that she

"wasn't paying attention" and that "she does not normally look in front of her while

walking"), *and Bud's Outlet v. Smith*, 781 So. 2d 219, 223 (Ala. Civ. App. 2000)

(finding that the hazard was "open and obvious" when the plaintiff "was distracted

either by her grandson or by her daughter at the time of her fall"), *with Arnold v. Wal-*

*Mart Stores, Inc.*, No. 08-1021, 2009 WL 4827389, at *5 (M.D. Ala. Dec. 10, 2009)

(failing to find that a liquid puddle was "open and obvious" because the plaintiff

"testified that she was not looking at the floor because she was looking at the shelves,

searching for a roasting pan[,]" and, thus, the plaintiff "could have been watching

where she was going, but simply was not looking at the floor" (quoting *Blizzard*, 196

F. Supp. 2d at 1208; *Ryles*, 2004 WL 3711972)), *and Ryles*, 2004 WL 3711972, at

*4-5 (failing to find that a hazard was "open and obvious" because the plaintiff was

"browsing the produce in a grocery aisle" and "watching . . .the shelves" instead of the

floor and, thus, "could have been watching where she was going, but simply [was] not

looking at the floor" (quoting *Blizzard*, 196 F. Supp. 2d at 1208)), *and Blizzard*, 196

F. Supp. 2d at 1208 (failing to find that the hazard was open and obvious—even when

the plaintiff "testified that[,] had she been watching where she was walking, the

[hazard] would have been open and obvious" because "she could have been watching

where she was going, but simply [was] not looking at the floor"), *and Williams v.

Bruno's Inc.*, 632 So. 2d 19, 22 (Ala. 1993) (failing to find that the hazard was "open

and obvious" when the plaintiff testified that he "was looking where [he] was going"

but "wasn't looking [at] the floor" because he was "there to shop," and, thus, "[o]ne

could reasonably infer from that testimony that [the plaintiff] was focusing his

attention on the shelves, not that he was not looking where he was going").

    In *Cummings*, the facts indicated that the plaintiff "was not watching her feet

but was focused on eating her popcorn," 2014 WL 3889953, at *2, but the

*Cummings* court never explicitly stated that it concluded that the plaintiff was not

watching where she was going. However, as stated earlier, the Court finds that

*Cummings* is unpersuasive for two alternative reasons. First, although the first part of

the above-quoted fact only indicates that the plaintiff was not looking at the floor, the

Court notes that the second part—that the plaintiff "was focused on eating her

popcorn"—may have led the *Cummings* court to conclude that she was not watching

where she was going. If this is true, then *Cummings* is factually distinguishable from

this case, in which there is no evidence that Ms. Lawson was not watching where she

was going, but, instead, only evidence that she was not looking down at the floor.[19]

Alternatively, if the *Cummings* court only concluded that the plaintiff was not looking

down at the floor—but failed to conclude that she was not watching where she was

going—then the Court does not find *Cummings* persuasive because it is contrary to

the Alabama law cited above.

ii. Ex parte Neese *Is Distinguishable and Unpersuasive*

As stated above, Wal-Mart cites *Ex parte Neese* for the proposition that

summary judgment should be granted "based on the open and obvious nature of the

element, where [the] plaintiff walk[s] over the hazard 2-3 times, failing to exercise

reasonable care to appreciate the hazard." (Doc. 20 at 94) (citing *Ex parte Neese*, 819

So. 2d at 590). However, the Court does not find *Ex parte Neese* persuasive for two

alternative reasons: (1) it is factually distinguishable, and (2) alternatively, it answers

a different question than the one relevant to this case.

---

[19] The Court notes that the four cases that it cites above for the proposition that summary judgment should be denied when a plaintiff "could have been watching where she was going, but simply [was] not looking at the floor" are all similar in that the reason the plaintiff was not looking at the floor was because she was shopping, which is not true here. However, as is made clear from the broad language in these cases, this specific reason for not looking down at the floor—shopping and looking at merchandise—is not necessary for summary judgment to be denied. *See, e.g.*, *Blizzard*, 196 F. Supp. 2d at 1208 (denying summary judgment with the broad language that "[the plaintiff] could have been watching where she was going, but simply [was] not looking at the floor" and then only discussing the reason for her failure to look at the floor—shopping—in the context of stating that it showed that she was not distracted and, thus, that this was not a case in which she was not watching where she was going).

First, Wal-Mart's characterization of *Ex parte Neese* and the facts material to

its outcome is misleading because, as stated earlier, "the analysis of 'slip and fall'

cases under Alabama law is fact intensive," *Blizzard*, 196 F. Supp. 2d at 1207, and

there were other facts relevant to the *Ex parte Neese* court's analysis besides those

that Wal-Mart highlights. Most importantly, in *Ex parte Neese*, the plaintiff "had been

visiting [the defendant's] house a few times a year for 18 years before the accident,"

and "the doormat [on which she fell] had been on the premises for 8 to 10 years." 819

So. 2d at 590. Further, during the time that the plaintiff fell, she described the weather

"as a 'monsoon.'" *Id.* Accordingly, the hazard in *Ex parte Neese*—which was an

upside-down door mat that the plaintiff knew was on the premises and that was wet

because of weather conditions known to the plaintiff—is different than the hazard in

this case—which is a liquid puddle that was not usually on the checkout aisle and that

was not caused by conditions known to Ms. Lawson. Accordingly, because of these

differences, *Ex parte Neese* does little to help answer the question in this case:

whether "an objectively reasonable person in [Ms. Lawson's] circumstances would

have noticed and appreciated the dangerousness of [the liquid puddle]." *See Johnson*,

2016 WL 4585927, at *4. Further, even though the *Ex parte Neese* court did not

discuss this fact in detail, it did note that the plaintiff "attribute[d] her fall to a

'combination of the wet upside-down mat and <u>turning to see what was going on</u>.'" 819

So. 2d at 590 (emphasis added). Accordingly, because the plaintiff was "turning to see what was going on" when she slipped and fell, she was not looking where she was going when she fell. This further distinguishes *Ex parte Neese* from this case, in which, as stated above, there is evidence only that Ms. Lawson was not looking down at the floor, and there is no evidence that she was not watching where she was going.

Alternatively, based on the *Ex parte Neese* court's analysis, it appears that that court was trying to answer a slightly different question. To support its conclusion, the *Ex parte Neese* court cited *Ex parte Mountain Top Indoor Flea Market, Inc.*, 699 So. 2d 158 (Ala. 1997), and stated that, in that case, the danger was open and obvious because "the plaintiff was aware of the presence of loose rocks on the defendant's property and should have recognized the danger they posed." *Ex parte Neese*, 819 So. 2d at 590 (citing *Ex parte Mountain Top Indoor Flea Market, Inc.*, 699 So. 2d 158). Accordingly, because the *Ex parte Neese* court cited to a case in which the plaintiff was actually aware of the hazard and the question was whether she should have recognized the danger that the hazard posed, it appears that the *Ex parte Neese* court determined that the plaintiff in its case similarly was aware of the hazard and, thus, the issue it had to decide was whether she should have recognized the danger that the hazard posed. This is a slightly different question than the question in this case, in which it is undisputed that Ms. Lawson—or, an objectively reasonable

person in her circumstances—would have recognized the danger of the liquid puddle.
Instead, the question here is whether Ms. Lawson—or, an objectively reasonable
person in her circumstances—should have noticed the liquid puddle. *Cf. Johnson*,
2016 WL 4585927, at *4 (stating that the inquiry is whether "an objectively
reasonable person in [the plaintiff's] circumstances would have [1] noticed <u>and</u> [2]
appreciated the dangerousness of [the hazard]" (emphasis added)). Accordingly, *Ex
parte Neese* is unhelpful in answering the question at issue here.

     iii.  *Wal-Mart's Paragraph Analogizing This Case to*
         Cummings *and* Ex parte Neese *Is Unpersuasive*

   Lastly, the Court will address the paragraph in which Wal-Mart analogizes this
case to *Cummings* and *Ex parte Neese*. The Court notes that the reason it is
addressing this paragraph separately even though it has already found that
*Cummings* and *Ex parte Neese* are unpersuasive is because Wal-Mart refers to more
facts than just those that are similar to the facts of *Cummings* and *Ex parte Neese*.
Specifically, Wal-Mart argues as follows:

   Like the plaintiffs in <u>Cummings</u> and <u>Neese</u>, Ms. Lawson had
walked in, around and toward the brownish puddle on the floor several
times prior to the time she slipped in it. She admits she could have seen
it from a distance of 10 feet if she had looked at the floor. If she had
been exercising reasonable care for her own safety, <u>particularly when
she has years of job training and experience of monitoring the floors of
businesses for safety reasons</u>, she would have seen and avoided the
brownish puddle on the floor. The entire basis of Wal-Mart's liability in
this case rests upon its "superior knowledge of the danger which
cause[d]" [Ms. Lawson's] alleged injuries and damages. Because the

attendant alleged risk here was open and obvious, Wal-Mart cannot be
held liable."

(Doc. 20 at 95) (first alteration in original) (emphasis added) (citation omitted)

(citing *Denmark v. Mercantile Stores Co.*, 844 So. 2d 1189, 1194 (Ala. 2002)).

The first two facts in the above-quoted paragraph convey that, similar to the

facts of *Cummings* and *Ex parte Neese*, Ms. Lawson walked around the hazard

multiple times and the hazard was readily visible to anyone who looked down. As

discussed above, however, these facts and these similarities to *Cummings* and *Ex*

*parte Neese* are not sufficient to grant Wal-Mart summary judgment because

*Cummings* and *Ex parte Neese* do not stand for the proposition that those facts are

sufficient. Instead, both *Cummings* and *Ex parte Neese* either had other facts that are

not present here that were material (i.e., that the plaintiff in *Cummings* might not have

been watching where she was going because she was focused on eating her popcorn

and that the plaintiff in *Ex parte Neese* was aware of the presence of the mat and the

conditions that made it wet and that she also might not have been watching where she

was going because she was turning around) or are unpersuasive for other reasons that

make any factual similarity moot (i.e., that, alternatively, *Cummings* is inconsistent

with Alabama law and that, alternatively, *Ex parte Neese*, is answering a different part

of the "open and obvious" inquiry). However, in the above-quoted paragraph, Wal-

Mart also mentions other facts—namely, Ms. Lawson's "years of job training and

experience of monitoring the floors of businesses for safety reasons" that were not

present in *Cummings* and *Ex parte Neese*. (*See id.*) Accordingly, the Court will

construe Wal-Mart's argument in this paragraph to be that the two facts that are

similar to those of *Cummings* and *Ex parte Neese*—which, again, the Court has found

are insufficient to grant Wal-Mart summary judgment—plus the additional fact of Ms.

Lawson's "years of job training and experience of monitoring the floors of businesses

for safety reasons" are sufficient to entitle Wal-Mart to summary judgment.

However, the Court rejects this argument because Ms. Lawson's "years of job training

and experience of monitoring the floors of businesses for safety reasons" are

irrelevant, and, thus, this additional fact does not change the Court's finding that

summary judgment is inappropriate.

More specifically, Ms. Lawson's job training and experience is irrelevant

because the "open and obvious" inquiry is based on an <u>objective</u> standard and asks

"whether an <u>objectively reasonable person</u> in Ms. [Lawson]'s circumstances would

have noticed and appreciated the dangerousness of the [liquid puddle] on [Wal-Mart's]

[checkout aisle] floor." *Johnson*, 2016 WL 4585927, at *4 (emphasis added); *see

also Harris*, 2019 WL 650436, at *3 ("A condition is 'obvious' if the risk is apparent

to, and of the type that would be recognized by, a <u>reasonable person</u> in the position of

the invitee." (emphasis added) (citing *Hartzog*, 686 So. 2d at 327; *Hines*, 567 So. 2d

at 1284)). Accordingly, because the standard is tied to an "objectively reasonable

person," *Johnson*, 2016 WL 4585927, at *4, Ms. Lawson's employment history and experience, knowledge, and training of monitoring floors for safety hazards do not factor into the analysis of whether the liquid puddle was "open and obvious."

This can be seen more clearly in *Ryles*, 2004 WL 3711972. In *Ryles*, the plaintiff—Ms. Ryles—"tripped over a brown box" in a Wal-Mart grocery aisle. *Id.* at *1. The box that she tripped over was one of the "[b]oxes of merchandise [that] were arranged down the center of the aisle, waiting to be stocked." *Id.* Notably, Ms. Ryles had been "working at Wal-Mart [since] 1987, and, at the time of [the] incident [in 2002] which gave [rise] to [the] cause of action, was working as a sales associate" in the store. *Id.* In fact, the night the incident occurred, she had been working "until 10:30 or 11:00 p.m." and then, "[a]fter clocking out," walked over to the grocery aisle to shop for items. *See id.* "Wal-Mart's primary argument for dismissing the negligence claim [was] that the brown box constituted an [open and] obvious danger of which [Ms.] Ryles should have been aware had she been exercising ordinary care." *Id.* at *3. However, the *Ryles* court found that the "brown box did not, as a matter of law, constitute an open and obvious danger of which [Ms.] Ryles should have been aware." *Id.* at *5. Notably, despite the fact that she had been working for Wal-Mart for fifteen years before the incident—and, indeed had been working in the exact store in which the incident occurred right before it happened—the court never discussed Ms. Ryles's position with Wal-Mart when discussing whether the brown box was "open

and obvious." *See id.* at *3-5. Instead, it treated Ms. Ryles purely as an objectively

reasonable "customer." *See id.* at *4 ("[Ms.] Ryles was doing exactly what Wal-Mart

would expect and hope its <u>customers</u> to do in its stores—examining the produce in

order to determine whether to make a purchase." (emphasis added)).[20]

Lastly, Wal-Mart does not cite any authority stating that Ms. Lawson's

employment history, experience, knowledge, or training regarding monitoring floors

for safety hazards is relevant to whether the liquid puddle was "open and obvious."

Accordingly, the Court finds that Ms. Lawson's employment history, experience,

knowledge, and training is irrelevant to the inquiry of whether the liquid puddle was

"open and obvious." Thus, the Court continues to find that summary judgment is

inappropriate.

      b.     <u>The Court rejects Wal-Mart's implicit argument based on
its list of material facts</u>

––––––––––––––––––––––––––

[20]  The Court notes that Ms. Ryles's situation is slightly different than Ms. Lawson's
situation. More specifically, Ms. Ryles worked "as a sales associate in cosmetics," and—while it is
definitely possible—there is no evidence that she was familiar with Wal-Mart's practice in the
grocery section of leaving "[b]oxes of merchandise" that were "waiting to be stocked" in the
"center of the aisle," and there is also no evidence that Ms. Ryles had training regarding monitoring
the floors for safety hazards. *See Ryles*, 2004 WL 3711972, at *1. Here, however, as Wal-Mart
points out, Ms. Lawson does have "years of job training and experience of monitoring the floors of
businesses for safety reasons." (*See* doc. 20 at 95). However, this difference does not undermine
the Court's analysis because *Ryles* still shows that an individual who is a customer in a store—even
if there is something special about them, such as the fact that they also work in that store—should
be held to the same standard as an objectively reasonable customer during an "open and obvious"
analysis. Accordingly, *Ryles* supports the Court's position that Ms. Lawson's job history,
experience, knowledge, and training is irrelevant to its analysis.

Now that the Court has addressed Wal-Mart's argument based on

*Cummings* and *Ex parte Neese*—which, again, is Wal-Mart's only explicit argument

and the only argument supported with legal citations—it will now review Wal-Mart's

list of material facts that it includes in its analysis section and address Wal-Mart's

implicit argument that summary judgment should be granted on these facts. However,

once again, the Court rejects Wal-Mart's argument.

More specifically, in the analysis section of the Motion, Wal-Mart argues that

the following material facts show that the puddle was "open and obvious"[21]:

> [1] [Ms. Lawson's] employment history includes four and a half
> years of job duties which included the monitoring of floors for safety
> hazards that may confront customers and employees of retail
> establishments.

> [2] [She] describes a puddle on the floor which she only saw **after**
> she slipped as being two feet long and one foot wide. [3] Her clothes had
> soaked up some of the liquid[,] as her pants were wet down her right leg.
> [4] Her hands were also wet. [5] The puddle was "brownish," like dirty
> water, was "dirty," had "dirty footprints[,]" and there were shopping cart
> tracks in it. [6] She admits that she walked over the puddle on the floor
> twice before she slipped. [7] She walked from Aisle A to the checkout
> aisle on two different occasions and had a clear path ahead of her on
> both occasions. [8] She admittedly was eighteen feet away from the
> substance on the floor twice and walked directly toward it. [9] Because
> the aisle is five feet wide, she necessarily had to be walking through it in
> flip flops as she pushed her cart toward the cash register, walked around
> the cart moving groceries from the cart onto the conveyor belt[,] and
> then exited the aisle to get salad dressing. [10] She further acknowledged
> that she simply failed to see the puddle on the floor prior to the time she

---

[21]  Because it refers to these facts later in its analysis, the Court has numbered each fact.

slipped.

> [11] Despite her knowledge, training[,] and experience, she
> walked in the puddle and toward the puddle several times without looking
> at the floor once she was on the checkout aisle. [12] She slipped in a
> dirty brownish puddle on a white floor that she admittedly could have
> seen from a distance of 10 feet if she had looked ahead of her over the
> path she was about to travel. [13] On all three occasions she walked over
> the area, nothing was blocking her view. [14] If she had seen the
> substance, she would have recognized it as a slip hazard and would not
> have stepped in it.

(Doc. 20 at 92-93). However, before addressing Wal-Mart's implicit argument based

on these facts, the Court notes that these facts are not stated in the light most

favorable to Ms. Lawson, and, thus, are inconsistent with the facts that are included in

the Court's "Statement of Facts." Accordingly, the Court will revise Wal-Mart's list

of material facts so that they are in the light most favorable to Ms. Lawson. More

specifically, the Court must revise facts #1, 6, 7, 9, 11, and 13.

First, the Court notes that fact #1 and the first half of fact #11, which both deal

with Ms. Lawson's past employment experience, knowledge, and training regarding

monitoring the floor for hazards to customers, are irrelevant for the reasons

explained previously.

Second, facts #6 and 9 are not stated in the light most favorable to Ms. Lawson.

More specifically, fact #6 states as follows: "[Ms. Lawson] admits that she walked

over the puddle on the floor twice before she slipped." (*Id.* at 92). Fact #9 states as

follows: "Because the aisle is five feet wide, she necessarily had to be walking

through it in flip flops as she pushed her cart toward the cash register, walked around

the cart moving groceries from the cart onto the conveyor belt[,] and then exited the

aisle to get salad dressing." (*Id.* at 93). However, these facts are not stated as they

were proffered by Wal-Mart in its "Statement of Undisputed Relevant Material Facts"

section in the Motion. Accordingly, the Court will replace them with facts #53 and 55

from Wal-Mart's "Statement of Undisputed Relevant Material Facts" (which are

included in the Court's "Statement of Facts"):

> "[53] She admits that because the checkout aisle is only five feet wide
> that there is almost no way her shopping cart could have missed traveling
> through the puddle at the time she pushed her cart down the checkout
> aisle. . . . [55] Ms. Lawson admits that she would have walked through the
> puddle [in flip flops] at the time she pushed her shopping cart down the
> checkout aisle."

*See supra* Part III; (doc. 20 at 82, ¶ 53; 83, ¶ 55); (*see also id.* at 77, ¶ 12) (stating

that Ms. Lawson was wearing "flip flops").

Third, fact #7 also is not stated in the light most favorable to Ms. Lawson. Fact

#7 states as follows: "[Ms. Lawson] walked from Aisle A to the checkout aisle on two

different occasions and had a <u>clear path</u> ahead of her on both occasions." (Doc. 20 at

92) (emphasis added). However, the Court notes that Ms. Lawson undisputedly had a

shopping cart in front of her during the first time she walked to the checkout aisle.

While "[t]he merchandise in her cart was not above the height of her shopping cart

itself, and she conceded she was able to see clearly," *see supra* Part III; (doc. 20 at

79, ¶ 32), the presence of her shopping cart still means that she did not have a "clear path" ahead of her on the first occasion that she walked to the checkout aisle. Accordingly, the Court will revise fact #7 to state as follows: "[Ms. Lawson] walked from Aisle A to the checkout aisle on two different occasions and[, except for her shopping cart—which she could see over—being in front of her on the first occasion,] had a clear path ahead of her on both occasions."

Lastly, fact #13 is also not stated in the light most favorable to Ms. Lawson. Fact #13 states as follows: "On all three occasions she walked over the area, nothing was blocking her view." (Doc. 20 at 93). However, Ms. Lawson testified that "when [she] initially went up to the register, it's very possible that [her] [shopping] cart could have been over [the puddle] or the handle [of the cart] could have been over it." *See supra* Part III; (doc. 20 at 37:123). Further, there is no evidence that the shopping cart moved while Ms. Lawson was unloading groceries before she went to get the salad dressing. Instead, the only evidence regarding the shopping cart being moved is Ms. Lawson's testimony that, "as well as [she] can remember," "[w]hen [she] got back to aisle ten, . . . [her] [shopping] cart . . . [had been] pushed up . . . [m]aybe five additional feet." *See supra* Part III; (doc. 20 at 31:99). Accordingly, viewing the facts in the light most favorable to Ms. Lawson, her shopping cart may have been blocking her

view of the puddle during the first two occasions that she walked over the area.[22] Thus, the Court will revise fact #13 to read as follows: "On [the first two] occasions [that] she walked over the area, [it is possible that her shopping cart could have been blocking her view of the puddle, but, on the third occasion that she walked over the area,] nothing was blocking her view."

Accordingly, the material facts highlighted by Wal-Mart in the Motion—as they were just revised—are as follows:

[1] [omitted]

[2] [Ms. Lawson] describes a puddle on the floor which she only saw **after** she slipped as being two feet long and one foot wide. [3] Her clothes had soaked up some of the liquid[,] as her pants were wet down her right leg. [4] Her hands were also wet. [5] The puddle was "brownish," like dirty water, was "dirty," had "dirty footprints[,]" and there were shopping cart tracks in it. [Revised 7] She walked from Aisle A to the checkout aisle on two different occasions and[, except for her shopping cart—which she could see over—being in front of her on the first occasion,] had a clear path ahead of her on both occasions. [8] She admittedly was eighteen feet away from the substance on the floor twice

_____

[22] The Court notes that, at first, this fact may seem inconsistent with facts #53 and 55 from the Motion—which were not disputed by Ms. Lawson—and which are as follows:

"[53] She admits that because the checkout aisle is only five feet wide that there is almost no way her shopping cart could have missed traveling through the puddle at the time she pushed her cart down the checkout aisle. . . . [55] Ms. Lawson admits that she would have walked through the puddle [in flip flops] at the time she pushed her shopping cart down the checkout aisle."

*See supra* Part III; (doc. 20 at 82, ¶ 53; 83, ¶ 55). However, these two sets of facts are not inconsistent because it is possible that Ms. Lawson walked through part of the puddle and that the front part of her shopping cart was also covering part of the puddle.

and walked directly toward it. [Revised 6 and 9] [She admits that because the checkout aisle is only five feet wide that there is almost no way her shopping cart could have missed traveling through the puddle at the time she pushed her cart down the checkout aisle. She admits that she would have walked through the puddle in flip flops at the time she pushed her shopping cart down the checkout aisle.] [10] She further acknowledged that she simply failed to see the puddle on the floor prior to the time she slipped.

[Revised 11] . . . [S]he walked in the puddle and toward the puddle several times without looking at the floor once she was on the checkout aisle. [12] She slipped in a dirty brownish puddle on a white floor that she admittedly could have seen from a distance of 10 feet if she had looked ahead of her over the path she was about to travel. [Revised 13] On [the first two] occasions [that] she walked over the area, [it is possible that her shopping cart could have been blocking her view of the puddle, but, on the third occasion that she walked over the area,] nothing was blocking her view. [14] If she had seen the substance, she would have recognized it as a slip hazard and would not have stepped in it.

(Doc. 20 at 92-93) (revised as stated above).[23]

Upon considering all the facts included in the its "Statement of Facts,"

including the material facts highlighted by Wal-Mart in the Motion and which are

quoted as revised above, the Court—viewing the facts in the light most favorable Ms.

Lawson—rejects Wal-Mart's implicit and unsupported argument that, based on these

---

[23] The Court notes that it revised Wal-Mart's list of material facts because it must view the facts in the light most favorable to Ms. Lawson. However, even if the Court had not revised these facts, it would still have reached the same conclusion that summary judgment based on the puddle being "open and obvious" should be denied. *See Humphrey v. Wal Mart Stores East, LP*, No. 12-1786, 2013 WL 5707246, at *4 (N.D. Ala. Oct. 21, 2013) (stating that "whether the plaintiff should have been aware of the defect[] [is] normally [a] question[] for the jury" (quoting *Williams*, 632 So. 2d at 22)).

facts, the liquid puddle was "open and obvious" as a matter of law.[24] In reaching its

decision, the Court is guided by two things. First, the Court notes that, under Alabama

law, "whether the plaintiff should have been aware of the defect[] [is] normally [a]

question[] for the jury," *Humphrey v. Wal Mart Stores East, LP*, No. 12-1786, 2013

WL 5707246, at *4 (N.D. Ala. Oct. 21, 2013), and the Court finds that the facts of

this case are not so clear-cut that this inquiry—which, again, is "normally [a]

question[] for the jury"—should be decided by the Court at the summary judgment

stage.

Second, the Court is persuaded by the factual similarity of this case to

*Humphrey* and the *Humphrey* court's decision to reject the defendant's "open and

obvious" argument and, thus, to deny summary judgment. More specifically, the facts

in *Humphrey* were as follows:

> . . . [Ms. Humphrey,][ who was wearing flip flops,] . . . went alone
> to [a] Wal-Mart store . . . .
>
> . . . [S]he used a push shopping cart. Just before the incident at
> issue, [she] entered the Garden Center near the cash register to look at
> pots. As [she] walked toward the pots, she did not look at the floor. After
> taking two to three steps, or walking about six feet, toward the pots . . .,
> [she slipped and fell]. . . . [She] testified that while sitting on the floor,
> she noticed her bottom and legs were wet.

---

[24]  The Court notes that it could also consider any other evidence in the record, but it is not
required to do so, and it will not do so. *See* FED. R. CIV. P. 56(c)(3) (stating that "[t]he court need
consider only the cited materials"); (*see also* doc. 2 at 16) (requiring the moving party to "list . . .
each material fact . . . upon which [it] relies to demonstrate that it is entitled to summary
judgment").

It was only after she fell that [she] noticed water on the floor. . . . [She] described the water as messy, tracked, and covering a 38–inch by 10–inch surface area. [She] testified that . . . she saw some footprints in it. Once [she] looked at the floor after the incident, she did not have any difficulty seeing the water. [She] admits that she had an unobstructed view and if she had chosen to look down at the floor as she was walking, she could have seen the water from a distance of 10 or 15 feet away. If [she] had seen the water, she would not have stepped in it because she would have recognized it as a slip hazard.

*Id.* at *1 (citations and footnote omitted).

Accordingly, the facts of *Humphrey* are very similar to the facts here, with the exception that Ms. Lawson—unlike the plaintiff in *Humphrey*—walked through the area containing the liquid puddle multiple times. However, the Court is not persuaded that this difference changes the outcome of this case for two reasons. First, Wal-Mart cites no case saying that this fact—that the plaintiff walked over the area and the puddle multiple times—is sufficient to grant summary judgment when, in its absence, the other facts would be insufficient to grant summary judgment. This is because, as stated earlier, the two cases that Wal-Mart cites where the plaintiff walked around the hazard multiple times before falling—*Cummings* and *Ex parte Neese*—had other key facts that made summary judgment appropriate.

Second, here, although Ms. Lawson walked around the area of the puddle twice before she fell, the facts indicate that, on both times, she "did not slip or slide." *See supra* Part III; (doc. 20 at 79, ¶ 37; 80, ¶ 40). Further, Wal-Mart has not proffered any facts showing that anything happened during those two occasions to make Ms. Lawson

aware of the puddle, such as, for example, there being a splashing sound or Ms. Lawson's feet becoming wet. Accordingly, the only way that Ms. Lawson—or, "an objectively reasonable person in [her] circumstances," *see Johnson*, 2016 WL 4585927, at *4—would have noticed the puddle on those two occasions is if she had looked down. However, as the Court stated earlier, there is a distinction between a plaintiff not "looking where she [is] walking"—in which case a court will very likely grant summary judgment based on the hazard being "open and obvious"—versus a plaintiff looking where she is walking but just "not looking down"—in which case a court will very likely not grant summary judgment based on the hazard being "open and obvious." Here, because the facts indicate that Ms. Lawson was just not looking down at the floor—and do not indicate that she was not watching where she was going—the Court cannot find that the puddle was "open and obvious" as a matter of law. Thus, summary judgment is inappropriate. *See, e.g.*, *Ryles*, 2004 WL 3711972, at *4 (denying summary judgment in part because the plaintiff "could have been watching where she was going, but simply [was] not looking at the floor" (emphasis added) (quoting *Blizzard*, 196 F. Supp. 2d at 1208)); *Blizzard*, 196 F. Supp. 2d at 1208 (same).

## B. Wal-Mart Will Be Granted Summary Judgment on the Wantonness Claim

In the Motion, Wal-Mart argues that it should be granted summary judgment

on Ms. Lawson's wantonness claim. The Court will first discuss the "wantonness" standard on which its analysis relies. Then, the Court will address Wal-Mart's arguments and Ms. Lawson's response to them.

"Under Alabama law[,] 'wantonness' is defined as the 'doing of some act or something with reckless indifference to the consequences' or 'a failure or omission to do something, with reckless indifference to the consequences.'" *Blankenship v. Baker Foods, Inc.*, No. 17-345, 2018 WL 6725326, at *4 (N.D. Ala. Dec. 21, 2018) (quoting *Weatherly v. Hunter*, 510 So. 2d 151, 152 (Ala. 1987)).

Here, Wal-Mart argues, *inter alia*, that it should be granted summary judgment on the wantonness claim because "[t]here is no evidence [that] Wal-Mart possessed the requisite level of consciousness to establish wantonness as a matter of Alabama law." (Doc. 20 at 98). More specifically, Wal-Mart argues as follows:

> . . . [Ms. Lawson] cannot adduce any evidence of premeditation or knowledge on the part of Wal-Mart of any risk posed to her on the date in question to support a claim of wanton conduct. She acknowledged the store was well-lit and that she had no problem seeing as she shopped in the store. She saw nothing on the floor during the hour that she was shopping. She testified that she did not have any evidence to indicate that Rebecca, the Wal-Mart associate, was guiding her toward a checkout aisle that contained a hazard. Likewise, she has no information or evidence that the liquid had been reported to Wal-Mart prior to the time she slipped. There is no evidence before this Court as to the origin of the puddle or as to the length of time it had been on the floor."

(*Id.* at 97-98).

In response, Ms. Lawson does not dispute Wal-Mart's argument but, instead,

only states that "she is in need of additional discovery with respect to the elements of her claim for wantonness" and that she "incorporates by reference her [Motion To Reopen Discovery]." (Doc. 25 at 18). However, the Court notes that it has already denied her Motion To Reopen Discovery and incorporates by reference its Order of denial. (*See* doc. 26). Further, upon its review of the facts, the Court notes that there is no evidence of wantonness on the part of Wal-Mart. More specifically, "[n]othing in the record points to a conscious disregard of a known danger." *Blankenship*, 2018 WL 6725326, at *4. "In fact, [as Wal-Mart points out, Ms. Lawson] testified during her deposition that she did not believe the store employees intended to cause her injuries." *Id.* Accordingly, the wantonness claim "fails as a matter of law," *id.*, and summary judgment will be granted on this claim.

## V.    CONCLUSION

For the reasons stated above, it is hereby **ORDERED**, **ADJUDGED**, and **DECREED** as follows:

1.    The twelve fictitious defendants and Ms. Lawson's claims against them are **DISMISSED WITHOUT PREJUDICE**;

2.    The Motion is **DENIED** as to the negligence claim; and

3.    The Motion is **GRANTED** as to the wantonness claim.

**DONE** and **ORDERED** this the 9th day of August, 2019.

VIRGINIA EMERSON HOPKINS
Senior United States District Judge